# IN THE UNITED STATES CIRCUIT COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

## No. 15-14070-D

_____

### GARY WAYNE COKER and TERESINA COKER,
**Appellees-Plaintiffs,**

v.

### AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, GREAT AMERICAN INSURANCE COMPANY, and ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,

**Appellants-Defendants.**

_____

### APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA

_____

### INITIAL BRIEF OF APPELLANT-DEFENDANT ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY

<div style="margin-left:40%">

R. Scott Masterson
Joelle C. Sharman
Lewis Brisbois Bisgaard & Smith LLP
1180 Peachtree Street, Suite 2900
Atlanta, GA 30309
(404) 348-8585
Attorneys for Appellant-Defendant Endurance
American Specialty Insurance Company

</div>

## <u>CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT</u>

American Guaranty & Liability Insurance Company ("American Guaranty"), Appellant-Defendant

Athans, Michael, Counsel for Great American Insurance Company ("Great American"), Appellant-Defendant

Coker, Gary Wayne, Appellee-Plaintiff

Coker, Teresina, Appellee-Plaintiff

DeFrank, Stephen, Counsel for American Guaranty, Appellant-Defendant

Dunbar, Karen, Counsel for Great American, Appellant-Defendant

Endurance American Specialty Insurance Company ("Endurance"), Appellant-Defendant

Gilson Athans P.C., Counsel for Great American, Appellant-Defendant

Great American Insurance Company, Appellant-Defendant

Kendall, Michael, Counsel for Appellees-Plaintiffs

Jones, (Hon.) Steve C., U.S. District Court Judge

Lewis Brisbois Bisgaard & Smith LLP, Counsel for Endurance, Appellant-Defendant

Liberty Mutual Life Insurance Company

Masterson, R. Scott, Counsel for Endurance, Appellant-Defendant

Schatz, Stephen, Counsel for American Guaranty, Appellant-Defendant

Sharman, Joelle, Counsel for Endurance, Appellant-Defendant

Smolar, Yehuda, Counsel for Appellees-Plaintiffs

Swift, Currie, McGhee & Hiers, LLP, Counsel for American Guarantee, Appellant-Defendant

Talley, French & Kendall, P.C., Counsel for Appellees-Plaintiffs

The Smolar Firm, Counsel for Appellees-Plaintiffs

Westchester Fire Insurance Company

## STATEMENT REGARDING ORAL ARGUMENT

Appellant-Defendant, Endurance American Specialty Insurance Company ("Endurance"), requests oral argument pursuant to Fed. R. App. P. 34 and 11th Cir. Rule 34-3(c). Oral argument will significantly aid the Court's decisional process because this case involves several issues of first impression, including:

a. Whether, in the uninsured motorist/underinsured (collectively "UM") context, a plaintiff must exhaust the available limits of an umbrella policy that, by virtue of a UM written waiver executed in favor of the primary liability carrier, and per the terms of the umbrella policy, drops down to provide plaintiff with primary UM coverage imposed by obligation of law?

b. Whether a plaintiff must exhaust the available limits of all underlying policies containing UM coverage imposed by operation of law before seeking additional benefits from a fourth-tiered excess insurer (which also provides UM coverage imposed by operation of law)?

c. Whether prioritizing coverage among secondary and excess carriers providing UM coverage imposed by operation of law thwarts the goal of the UM statute.

d. Whether the Court may "fashion" an appropriate rule of payment among secondary and excess UM carriers when the clear and unambiguous language in the respective policies dictates the order of priority?

i

e.  Whether an insured's unauthorized settlement with an underlying carrier providing UM coverage by operation of law, in violation of a "consent-to-settlement-"type provision in the excess carrier's policy, triggers the excess insurer's legal or contractual obligations under its policy?

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES AND CORPORATE DISCLOSURE STATEMENT ................................................................. C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF CONTENTS ........................................................................... iii

TABLE OF CITATIONS ......................................................................... v

STATEMENT OF JURISDICTION ........................................................ ix

STATEMENT OF THE ISSUES ............................................................ 1

STATEMENT OF THE CASE ................................................................ 1

    (i)    Course of Proceedings and Disposition in the District Court ............ 1

    (ii)   Statement of Material Facts ................................................ 3

    (iii)  Standard of Review ........................................................ 10

SUMMARY OF THE ARGUMENT ...................................................... 10

ARGUMENT ....................................................................................... 11

I.    Mr. Coker Did Not Meet His Burden of Proving Mr. Woodall's Legal Liability ..................................................................................... 11

II.   Coverage Never Triggered under the Endurance Policy Due to Mr. Coker's Failure to Exhaust the Underlying Limits of All Available UM Coverage .................................................................................. 13

    A.    The District Court Failed to Correctly Prioritize Coverage ............. 14

        1.    Courts first must look to the plain language of the policy when prioritizing stackable UM coverage. .......................... 14

        2.    The District Court failed to recognize that the "most

closely related to" judicial test supports that
Endurance stands last ........................................................17

3.    The "Other Insurance" clauses in the respective policies
have no relevance to this dispute ..........................................19

B.    Mr. Coker's Failure to Exhaust Vitiates His Claim.........................21

III.    Coverage Never Triggered under the Endurance Policy because Mr.
Coker Violated Its Consent-to-Settle Requirement....................................28

CONCLUSION .....................................................................................30

CERTIFICATE OF COMPLIANCE....................................................................30

CERTIFICATE OF SERVICE ..........................................................................31

# TABLE OF CITATIONS

*3060 Corp. v. Crescent One Buckhead Plaza, L.P.,* 686 S.E.2d 367
(Ga. Ct. App. 2009) .....................................................................20

*\*Abrohams v. Atlantic Mut. Ins. Agency,* 638 S.E.2d 330 (Ga. Ct.
App. 2006) ...........................................................................4, 28

*\*Am. Cas. Co. v. MAG Mut. Ins. Co.,* 185 Fed. Appx. 921 (11th Cir.
2006) ...................................................................................21

*American Fire & Cas. Co. v. McNeal,* 154 S.E.2d 411 (Ga. Ct. App.
1967) ...................................................................................29

*\*Atkinson v. Atkinson*, 326 S.E.2d 206 (Ga. 1985)..........................................20, 21

*Bartlett v. Am. Alliance Ins. Co.,* 424 S.E.2d 825 (Ga. Ct. App. 1992) ...............13

*Burkett v. Liberty Mut. Fire Ins. Co.,* 629 S.E.2d 558  (Ga. Ct. App.
2006) ................................................................................ 28, 29

*Campbell v. Campbell,* 339 S.E.2d 591 (Ga. 1986) ................................................13

*\*Canal Ins. Co. v. Merchant,* 483 S.E.2d 311 (Ga. Ct. App. 1997)......................14

*Canberg v. City of Toccoa,* 567 S.E.2d 21 (Ga. Ct. App. 2002) ...........................12

*Cannon v. Lardner*, 368 S.E.2d 730 (Ga. 1988) .....................................................14

*Clarendon Nat'l Ins. Co. v. Sledge*, 583 S.E.2d 514 (Ga. Ct. App.
2003) ...................................................................................19

*Continental Ins. Co. v. Echols*, 243 S.E.2d 88 (Ga. Ct. App. 1978) ....................12

*\*Cont'l Ins. Co. v. S. Guar. Ins. Co.,* 388 S.E.2d 16 (Ga. Ct. App.
1989) ................................................................................ 22, 24

*Cotton States Mut. Ins. Co. v. Hipps,* 481 S.E.2d 876 (Ga. Ct. App.
1997) ...................................................................................28

v

*Flamm v. Doe*, 307 S.E.2d 105 (Ga. Ct. App. 1983) .............................................28

*\*Flewellen v. Atlanta Cas. Co*., 300 S.E.2d 673 (Ga. 1983) ............................ 15, 28

*Fried v. North River Ins. Co*., 710 F.2d 1022 (4th Cir. 1983) .................................23

*Futch v. J. C. Penney Ins. Co.,* 354 S.E.2d 869 (Ga. Ct. App. 1987) .............. 24, 25

*\*Garmany v. Mission Ins. Co.,* 785 F.2d 941 (11th Cir. 1986) ...... 15, 21, 22, 23, 26

*Genone v. Citizens Ins. Co. of N.J.,* 60 S.E.2d 125 (Ga. 1950) ...............................15

*Georgia Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co*., 336 S.E.2d 237 (Ga. 1985) ................................................. 17, 20, 22, 24

*Ga. Mut. Ins. Co. v. S. General Ins. Co*., 351 S.E.2d 658 (Ga. Ct. App. 1986) .........................................................................................20

*Great Divide Ins. Co. v. Safeco Ins. Co.,* 580 S.E.2d 313 (Ga. Ct. App. 2003) ...........................................................................................17

*Home v. Great Am. Ins. Co.,* 134 S.E.2d 865 (Ga. Ct. App. 1964) .......................16

*Jefferson-Pilot Fire & Cas. Co. v. Combs,* 304 S.E.2d 448 (Ga. Ct. App. 1983) ................................................................................... 24, 25, 26

*Johnson v. State Farm Mut. Auto. Ins. Co.,* 455 S.E.2d 91 (Ga. Ct. App. 1995) ...................................................................................21

*Jordan v. Randolph Cnty. Sch*., 2009 U.S. Dist. LEXIS 42393 (M.D. Ga. May 19, 2009) ......................................................................13

*Leigh v. Warner Bros*., 212 F.3d 1210 (11th Cir. 2000).........................................10

*Livoti v. Aycock,* 590 S.E.2d 159 (Ga. Ct. App. 2003)..........................................24

*\*McGow v. McCurry*, 412 F.3d 1207 (11th Cir. 2005)..........................................25

*Merchant v. Canal Ins. Co.,* 520 S.E.2d 57 (Ga. Ct. App. 1999)............................14

*Nationwide Mut. Fire Ins. Co. v. Progressive Bayside Ins. Co*., 628
S.E.2d 177 (Ga. Ct. App. 2006)......................................................................19

*Pa. Lumbermens Mut. Ins. Co. v. Haney*. 375 S.E.2d 293 (Ga. Ct.
App. 1988) ......................................................................................................11

*\*Piedmont Office Realty Trust. Inc. v. XL Specialty Ins. Co.,* 771
S.E.2d 864 (2015).......................................................................... 8, 9, 26, 27

*\*Progressive Classic Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 670
S.E.2d 497 (Ga. Ct. App. 2008) ................................................. 17, 18, 19, 20

*Royer v. Murphy*, 625 S.E.2d 544 (Ga. Ct. App. 2006) .........................................29

*Ryan v. State Farm Mut. Auto. Ins. Co.,* 413 S.E.2d 705 (Ga. 1992).....................15

*Simalton v. AIU Ins. Co.,* 643 S.E.2d 553 (Ga. Ct. App. 2007) .............................16

*Smith v. Commercial Union Assurance Co.,* 268 S.E.2d 632 (Ga.
1980) ...............................................................................................................24

*St. Paul Fire & Marine Ins. Co. v. Goza,* 224 S.E.2d 429 (Ga. Ct.
App. 1976) ......................................................................................................21

*St. Paul Fire & Marine Ins. Co. v. Valley Forge Ins. Co*., 2009 U.S.
Dist. LEXIS 23663 (N.D. Ga. Mar. 23, 2009) ..............................................21

*State v. Fielden*, 629 S.E.2d 252 (Ga. 2006) .........................................................16

*State Farm Mut. Auto. Ins. Co. v. Harper*, 188 S.E.2d 813 (Ga. Ct.
App. 1972) .............................................................................................. 12, 25

*State Farm Mut. Auto. Ins. Co. v. Murphy*, 177 S.E.2d 257 (Ga. 1970) .......... 12, 20

*Terry v. Mays*, 291 S.E.2d 44 (1982)............................................................... 29, 30

*\*Travelers Home & Marine Ins. Co. v. Castellano*s, 773 S.E.2d 184
(Ga. 2015) ......................................................................................................11

*Travelers Indem. Co. v. Md. Cas. Co., 379 S.E.2d 183 (Ga. Ct. App. 1989) ................................................................. 14, 17, 20, 22, 24

Travelers Indem. Co. v. Williams, 167 S.E.2d 174 (Ga. Ct. App. 1969)................25

Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, 467 S.E.2d 875 (Ga. 1996) ........................................................................ 27, 28

United States v. Hubbard, 384 F. App'x 931 (11th Cir. 2010)...............................11

Virginia Properties v. Home Ins. Co., 74 F.3d 1131 (11th Cir. 1996)...................15

*Wellons, Inc. v. Lexington Ins. Co., 2013 U.S. Dist. LEXIS 42782 (N.D. Ga. 2013) .................................................................. 25, 26

W.J. Bremer Co. v. Graham, 312 S.E.2d 806 (Ga. Ct. App. 1983).........................13

Woods v. State Farm Mut. Auto. Ins. Co., 218 S.E.2d 65 (Ga. 1975) ....................21

Zurich Am. Ins. Co. v. Beasley, 666 S.E.2d 83 (Ga. Ct. App. 2008) ......................16

## STATUTES

*O.C.G.A. § 13-2-2................................................................. 14, 16, 24

*O.C.G.A. § 33-7-11........................................ 10, 11, 12, 14, 24, 27, 29

*O.C.G.A. § 33-24-12 ................................................................. 15, 28

28 U.S.C. § 1291 ....................................................................... ii

28 U.S.C. § 1332 ....................................................................... ii

28 U.S.C. § 1441 ....................................................................... ii

11th Cir. Rule 34-3(c) ................................................................ i

Fed. R. App. P. 34..................................................................... i

Fed. R. Civ. P. 56.....................................................................10

## <u>STATEMENT OF JURISDICTION</u>

The United States District Court for the Northern District of Georgia had original jurisdiction pursuant to 28 U.S.C. § 1332 in this civil action between citizens of different states, where the matter in controversy exceeded the sum of $75,000, exclusive of interest and costs.  The action was timely removed from Georgia Superior Court pursuant to 28 U.S.C. § 1441.  Likewise, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from a final judgment of the District Court.

## STATEMENT OF THE ISSUES

I.     Whether Appellees-Plaintiffs Gary Wayne and Teresina Coker (collectively "the Cokers") satisfied all conditions precedent under the UM statute?

II.     Whether coverage ever triggered under the policy issued by Appellant-Defendant Endurance American Specialty Insurance Company ("Endurance")?

III.     Whether the Cokers' violation of the consent-to-settle requirement in the Endurance policy bars the claim for breach of contract?

## STATEMENT OF THE CASE

This appeal stems from the District Court's entry of final summary judgment to Mr. Coker on his claim against Endurance, Great American Insurance Company ("Great American") and American Guarantee and Liability Insurance Company ("American Guarantee) for breach of contract due to their failure to indemnify him with regard to an unauthorized $5.5 million consent judgment into which the Cokers previously entered with an underinsured ("UM") tortfeasor.  (*Id.*)

**(i)     Course of Proceedings and Disposition in the District Court**

On October 12, 2012, the Cokers filed a two-count complaint for damages against Endurance, Great American, and American Guarantee in State Court in Fulton County, Georgia.  (R. 1.)  On November 20, 2012, the Complaint was timely removed to the United States District Court for the Northern District of

Georgia.  (R. 1.)  On November 27, 2012, Great American and American Guarantee filed their respective answers to the Complaint, while Endurance moved to dismiss the Complaint.  (R. 2, 4-6.)  Endurance filed its answer to the Complaint after the district court denied its Motion to Dismiss.  (R. 73, 119.)

On September 23, 2013, Endurance filed a Motion for Summary Judgment. (R. 65.)  On October 21, 2013, Great American, American Guarantee, and the Cokers filed their own respective Motions for Summary Judgment.  (R. 81-83.)  By order dated August 27, 2014, the District Court granted partial summary judgment to the Cokers on their breach of contract claim, and denied the other Motions.  (R. 120.)[1]

On May 4, 2015, the carriers jointly moved to vacate the District Court's August 27, 2014 order granting partial summary judgment to the Cokers.  (R. 160.) On May 5, 2015, the District Court conducted a bench trial on the Cokers' claim for bad faith damages, and reserved ruling on such claim. (R. 163.)

On August 25, 2015, the District Court entered final judgment against the Cokers on their claim for bad faith damages.  (R. 171.)  Also on August 25, 2015, the District Court entered an order granting in part and denying in part the carriers' joint motion to vacate the August 27, 2014 order. (R. 172.)

---

[1] The District Court construed all the Motions as seeking only partial summary judgment on the Cokers' breach of contract claim.  (R. 120.)

In its final order, the District Court awarded Mr. Coker $5,475,000, plus costs and accrued post-judgment interest, against Great American, American, Guarantee, and Endurance, *pro rata*, for breach of contract. (R. 172.) The District Court granted the three carriers a set-off against the award as to all prior confidential settlements between the Cokers and two underlying liability carriers. (*Id.*) On August 25, 2015, the Clerk entered final judgment. (R. 173.)

**(ii)**     **Statement of Material Facts**

**A.**     **The Accident and Underlying Lawsuit**

On September 18, 2007, Mr. Coker, while driving a car during the course and scope of his employment with Ansco & Associates ("Ansco") in Georgia, was injured in a collision involving a vehicle driven by underinsured third-party motorist, Donald Eugene Woodall. (R. 1, at Exh. A, ¶¶ 6, 8-9, 12; R. 59, ¶ 1.) On September 14, 2009, the Cokers filed a lawsuit against Mr. Woodall in Walton County Superior Court. (R. 1, at Exh. A.) On November 19, 2010, the Cokers, without notifying or obtaining the approval of Endurance, entered into a consent judgment against Mr. Woodall in the amount of $5.5 million. (R. 1, at Exh A, ¶ 16.) In exchange, the Cokers executed a limited liability release in favor of Mr. Woodall, and collected his policy limits of $25,000. (*Id*. at ¶ 17.)

### B.    Ansco's Automobile Liability Insurance Carriers.

Ansco, which owned the car driven by Mr. Coker at the time of the accident (R. 1, ¶ 10), was then an "Insured" under five separate liability insurance policies issued by Liberty Mutual Insurance Company (Liberty Mutual"), Westchester Fire Insurance Company ("Westchester"), Great American, American Guarantee, and Endurance.  (R. 59, ¶¶ 3-8.)  None of the five policies expressly provided UM coverage.  (R. 5-1, 5-2, 5.3, 5-4, 5-5, 59-1, 59-2.)  However, at the time of Mr. Coker's 2007 accident, Georgia law implied UM coverage in liability insurance policies, including excess and umbrella liability policies, unless the insured had rejected such coverage in writing.  *Accord Abrohams v. Atlantic Mut. Ins. Agency*, 638 S.E.2d 330 (Ga. Ct. App. 2006).

### 1.    The Liberty Mutual policy

The Liberty Mutual policy, having limits of $5 million, states that "[f]or any covered 'auto' you own, this Coverage Form provides primary insurance." (R. 5-1, pp. 87-88.)  A waiver of UM coverage under the Liberty Mutual policy was signed prior to Mr. Coker's September 2007 accident. (R. 59-1, p. 2.)[2]

### 2.    The Westchester policy

The Westchester policy provides up to $10 million in coverage for those sums in excess of the "Retained Limit." (R. 5-2, p. 11.)  However, as it is expressly

---

[2] The Endurance policy follows form to the Liberty Mutual policy.  Hence, the District Court should have found that the waiver applied to Endurance as well.

an umbrella policy, the Westchester policy's definition of "Retained Limit" depends on whether "Underlying Insurance" is available. (*Id*., p. 15; T. 91-92.)

Specifically, where "Underlying Insurance" is available, the Westchester policy defines "Retained Limit" to mean "the total of the applicable limits of [such] 'Underlying Insurance'[.]" (R. 5-2, p. 15.) In other words, the Westchester policy pays benefits only upon exhaustion of the underlying limits of available coverage. (*See id.*) In contrast, where no "Underlying Insurance" is available, the Westchester policy expressly defines "Retained Limit" as the amount of the insured's "Self-Insured Retention" (*i.e.,* the deductible). (*Id*. p. 15.) That is, if for any reason "Underlying Insurance" is not available, the Westchester policy, by its terms, "drops down" to provide primary coverage. (*See id.*, pp. 11, 15; T. 91-92.)

The Schedule to the Westchester Policy lists the Liberty Mutual policy as "Underlying Insurance." (R. 5-2, p. 6.)[3] But, because of the waiver, no UM insurance was available under the Liberty Mutual policy. (*See id*; R. 59-2.)

### 3.    The Great American policy

The Great American policy provides up to $10 million in coverage "in excess of the Underlying Limits of Insurance shown in … the Declarations[.]" (R.

---

[3] A written waiver of UM coverage under the Westchester policy was executed during the same policy period as when Mr. Coker's accident occurred, but not before it occurred. (R. 5-2, pp. 2, 3.)

59-2, p. 18.)  The Declarations lists the Westchester policy as the "First Underlying Insurance Policy."  (*Id*., p. 2.)

### 4.    The American Guarantee policy

The American Guarantee policy provides up to $25 million in coverage "only to damages covered by the Controlling Underlying Policy as shown in … the Declarations." (R. 5-4, p. 18.)  The Declarations lists the "Controlling Underlying Policy" as the Westchester policy. (*Id*., p. 3.)

### 5.    The Endurance policy

The Endurance policy, which follows form to the Westchester policy, provides up to $25 million in coverage in excess of "the sum of the limits of all applicable 'underlying insurance' identified in the Schedule of Underlying Policies…." (R. 5-5, pp. 21, 36, 41.)  The "Schedule of Underlying Policies" identifies the "first underlying insurance policy" as the Westchester policy, and specifies that the Great American policy and the American Guarantee policy are excess to the Westchester policy. (*Id*., p. 4.)

The Endurance policy also contains the following provision under the heading "Legal Actions Against Us:"

> There will be no right of action against us under this insurance unless:
>
> 1. you have complied with all the terms of this policy; and

> 2. the amount you owe has been determined by settlement with our written consent or by actual trial and final judgment; but we will not be liable for any "loss" or damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance as set forth in the Declarations.

(R. 5-5, p. 43 at § VI, F.)

### C.    The Cokers' Claims against Ansco's Liability Carriers

By separate letters sent in March 2011, the Cokers demanded that Liberty Mutual, Westchester, Great American, American Guarantee, and Endurance pay their $5.5 million consent judgment against Mr. Woodall. (R. 1, at Exh. A, ¶ 18; *see also* R. 59, ¶¶ 12-14.)  None of the five carriers did so.  (R. 59, ¶¶ 12-16.)

On or about March 15, 2012, the Cokers entered into a settlement agreement with Liberty Mutual for significantly less than its $5 million policy limits. (R. 59, ¶¶ 15, 16; *see also* R. 59-4, 61, 62.)  On or about June 28, 2012, the Cokers entered into a settlement agreement with Westchester for significantly less than its $10 million policy limits. (R. 59, ¶¶ 17, 18; *see also* R. 59-5, 61, 62.)  The Cokers did not notify nor obtain the consent of Great American, American Guarantee, or Endurance before entering into these settlement agreements.  (R. 119, pp. 9-11; 160-1, pp. 5-6; R. 172, pp. 6, n.7, 10.)

### D.    The Instant Lawsuit

On October 12, 2012, the Cokers filed the instant suit against Great American, American Guarantee, and Endurance for, *inter alia,* breach of contract.

(R. 1.)  On August 27, 2014, the District Court entered partial summary judgment in favor of the Cokers on their breach of contract claim.  (Doc. 120.)  The District Court held that the duty to exhaust all underlying insurance applied only as to primary UM coverage, and not to umbrella or excess UM coverage. (*Id.,* pp. 24-27.)  The District Court held that, notwithstanding the insuring clauses of their respective policies, Great American, American Guarantee, and Endurance shared *pro rata* liability for the Cokers' consent judgment.  (*Id.*, pp. 41-44.)

On May 4, 2015, Endurance, Great American, and American Guarantee jointly moved to vacate the District Court's entry of partial summary judgment in favor of the Cokers. (R. 160 and 160-1.)  First, the carriers argued that the District Court overlooked that the Westchester policy, by its terms, dropped down to provide primary coverage by virtue of the written waiver of UM coverage under the Liberty Mutual policy.  In this regard, the carriers argued that the Cokers' failure to exhaust the *primary* limits of their UM coverage with Westchester precluded coverage from arising under their respective policies.

Second, the carriers noted that, since entry of the partial summary judgment order, the Georgia Supreme Court, in *Piedmont Office Realty Trust. Inc. v. XL Specialty Ins. Co.,* 771 S.E.2d 864 (2015), held that no breach of contract claim could lie against an excess carrier when an insured, as here, unilaterally settled with an underlying carrier in violation of a policy provision such as those in

Defendants' policies here.  The carriers argued that because the Cokers violated

their policies' respective consent-to-settle requirements before obtaining their

consent judgment, and before settling with Liberty Mutual and Westchester, excess

coverage was never triggered.  Third, the carriers argued that the District Court

overlooked that Mrs. Coker was never insured under any of their policies.  As

such, the carriers argued that they did not owe her any duty to her under the

policies.

On August 25, 2015, the District Court rejected that the Cokers were

required to exhaust the limits of the Westchester policy.  (R. 172.)  The District

Court chided the carriers for "attempting to rely on the mere nature of the

Westchester policy as an umbrella policy to prioritize coverage."  (*Id.*, p. 8.)

The District Court also rejected that *Piedmont Office Realty Trust, Inc.* had

any application to the instant case.  (*Id.*, p. 10.)  The District Court agreed with the

Cokers that this recent Georgia Supreme Court case "concern[ed] only the liability-

liability insurer context, not the UM context."  (*Id.*)[4]

However, the District Court agreed with the defendant carriers that

"[b]ecause Mrs. Coker is not a statutory beneficiary of any of the excess policies

issued to Dycom, and given that none of the policies expanded the statutory

definition of insured to include her, there is no coverage for Mrs. Coker's judgment

---

[4] The District Court, over the Cokers' objection, correctly found that
Endurance had preserved this argument for review. (R. 172, pp. 6 & n. 7.)

under Defendants' policies." (*Id.*, p. 13.)  That said, the District Court did not vacate its prior judgment, but rather simply modified it to "allow Mr. Coker to recover the entirety of the damages," and to reflect that summary judgment was entered against Mrs. Coker on all claims.  (*Id.*, p. 15.)

**(iii)**    **Standard of Review**

This Court must review the District Court's order on the parties' respective motions for summary judgment *de novo*, construing all inferences in favor of the nonmoving party. *Leigh v. Warner Bros*., 212 F.3d 1210, 1214 (11th Cir. 2000). Summary judgment is proper only when no genuine issues of material fact exist. *Id*. *Accord* Fed. R. Civ. P. 56.

## SUMMARY OF THE ARGUMENT

Despite O.C.G.A. § 33-7-11(a), UM coverage never triggered under the Endurance policy for several equally compelling reasons.  First, Mr. Coker did not satisfy all conditions precedent to coverage under the UM statute.  Second, Mr. Coker's failure to exhaust the combined underlying limits of the Westchester, Great American, and American Guarantee policies vitiates his entitlement to benefits under the Endurance policy.  Third, Mr. Coker's violation of the consent-to-settle provision in the Endurance policy precludes his ability to recover against Endurance.  Consequently, reversal is required.

## ARGUMENT

In granting final summary judgment to Mr. Coker on his breach of contract claim against Endurance, the District Court overlooked that coverage was never triggered under the Endurance policy. Indeed, and as discussed more fully below, Mr. Coker's failure to satisfy several conditions precedent under the Endurance policy and the UM statute vitiates his claim against Endurance.

### I.    Mr. Coker Did Not Meet His Burden of Proving Mr. Woodall's Legal Liability.

Under Georgia law, an insured claiming an insurance benefit "has the burden of proving that a claim falls within the coverage of the policy." *Travelers Home & Marine Ins. Co. v. Castellanos,* 773 S.E.2d 184, 186 (Ga. 2015) (quotation marks omitted). To the extent that UM coverage was implied into the Endurance policy by operation of law,[5] and under the doctrine of the law of the case, Mrs. Coker did not meet her burden in this regard.[6]

---

[5] *See* note 2, *supra.*

[6] As the Cokers have not appealed the District's holding that Mrs. Coker is not an insured under the Endurance policy (R. 172, p. 15), it is the law of the case. *Accord United States v. Hubbard*, 384 F. App'x 931, 932 (11th Cir. 2010) ("[B]ecause the district court's previous denial on the merits of such a motion became a final order when Hubbard did not appeal it, … it is now the law of the case."). *See also, generally, Pa. Lumbermens Mut. Ins. Co. v. Haney*. 375 S.E.2d 293, 295 (Ga. Ct. App. 1988) ("[S]ince the named insured is a corporation, it has no family, and appellees are not insureds."); O.C.G.A. § 33-7-11(b)(1)(B) (defining "insured").

Neither did Mr. Coker.    Although only Mr. Coker, by virtue of his employment, was insured under the Endurance policy, Georgia law still required him to establish the "legal liability" of Mr. Woodall to prevail on his breach of contract claim.  *Accord* O.C.G.A. §§ 33-7-11 (a) (1), (g).  "Legal liability" means, simply, the securing of a judgment against the UM motorist.  *Continental Ins. Co. v. Echols*, 243 S.E.2d 88, 90 (Ga. Ct. App. 1978).

Here, Mr. Coker did not establish Mr. Woodall's legal liability as to him.  Rather, he and Mrs. Coker jointly obtained a consent judgment against Mr. Woodall, and did not apportion their damages between them.  This is fatal to their breach of contract claim, as Georgia law precluded Mr. Coker from recovering damages beyond his <u>actual</u> loss.  *See State Farm Mut. Auto. Ins. Co. v. Murphy*, 177 S.E.2d 257, 260 (Ga. 1970) ("The [UM] statute is designed to protect the insured as to [only] his actual loss."); *cf. State Farm Mut. Auto. Ins. Co. v. Harper*, 188 S.E.2d 813, 817 (Ga. Ct. App. 1972) ("[O]nce the insured party is paid in full under one contract of indemnity, recovery cannot be had again under another similar contract.").

The fact that O.C.G.A. § 33-7-11(a)(1) provides recovery of damages for loss-of-consortium does not change this conclusion.  A spouse's claim for loss of consortium "derives from the right of the other spouse to recover for [his] injuries."  *Canberg v. City of Toccoa*, 567 S.E.2d 21, 23 (Ga. Ct. App. 2002).

Such damages belonged to Mrs. Coker -- <u>not</u> Mr. Coker.  *See, generally, Campbell v. Campbell,* 339 S.E.2d 591, 593 (Ga. 1986) ("Any amount which is attributable to loss of consortium is not an asset of the marriage but is the estate of the spouse who suffered the loss of consortium.").[7]

In short, Mr. Coker was required, but failed, to obtain judgment against Mr. Woodall establishing the amount of his own damages before seeking UM coverage from Endurance.  As Mr. Coker did not satisfy this condition precedent to bringing suit, Endurance was entitled to summary judgment on all his claims.[8]

## II. Coverage Never Triggered under the Endurance Policy Due to Mr. Coker's Failure to Exhaust the Underlying Limits of All Available UM Coverage.

Alternatively, the District Court erred in failing to correctly prioritize coverage among the stackable policies here.  In doing so, the District Court overlooked that Mr. Coker's failure to exhaust the total limits of all underlying

---

[7] UM benefits representing her loss of consortium damages would have been available to Mrs. Coker *had she been an insured*.  *See Jordan v. Randolph Cnty. Sch.,* 2009 U.S. Dist. LEXIS 42393, *29 n. 7 (M.D. Ga. May 19, 2009) ("loss of consortium claim may be made by one spouse because of a tortious injury to the other spouse"); *Bartlett v. Am. Alliance Ins. Co.,* 424 S.E.2d 825, 827 (Ga. Ct. App. 1992) (damages for loss of consortium available for "bodily injury" under automobile liability policy).

[8] In reaching its conclusion, the District Court misplaced reliance on *W.J. Bremer Co. v. Graham*, 312 S.E.2d 806 (Ga. Ct. App. 1983).  (R. 172, p. 15, 16.)  *Graham* has no application here, as it merely stands for the proposition that "the cause of action for loss of consortium is by its very nature historically and definitionally self-limited to and applicable only to the two parties to the marital union, the spouses, and is, thus, unavailable to the minor child of the tortiously injured parent."  *Id.* at 808.

available UM coverage was fatal to his claim.  As such, this Court should reverse the District Court's order requiring Endurance to pay Mr. Coker's damages award *pro rata* with the other two Appellant carriers.

### A.    The District Court Failed to Correctly Prioritize Coverage.

When more than one source of UM coverage is available, Georgia law allows an insured to "stack" the policies to satisfy a judgment.  *Canal Ins. Co. v. Merchant*, 483 S.E.2d 311, 312 (Ga. Ct. App. 1997).[9]  But before a court may stack multiple UM policies, it must prioritize coverage among the carriers.  *Merchant v. Canal Ins. Co.,* 520 S.E.2d 57, 58 (Ga. Ct. App. 1999).  *See Travelers Indem. Co. v. Md. Cas. Co.,* 379 S.E.2d 183, 184 (Ga. Ct. App. 1989) (prioritization shows courts "to apportion between the UM carriers any damages beyond the coverage provided by the liability carrier.").

### 1.    Courts first must look to the plain language of the policy when prioritizing stackable UM coverage.

As O.C.G.A. § 33-7-11 is silent as to the order in which multiple UM policies should be stacked, Georgia courts first must look to the insuring provisions of the respective policies to determine the priority of the stackable coverage.  *Accord* O.C.G.A. § 13-2-2(2) (policy terms must be given their "usual and

---

[9] "Stacking" refers to an insured's ability to recover damages under multiple policies in succession until all damages have been satisfied, or until the total limits of all policies are exhausted.  *Merchant v. Canal Ins. Co.,* 520 S.E.2d 57, 58 (Ga. Ct. App. 1999); *accord*, *generally, Cannon v. Lardner*, 368 S.E.2d 730, 731 (Ga. 1988) (defining "stacking" as the accumulation of coverage).

common meaning"); *Garmany v. Mission Ins. Co.,* 785 F.2d 941, 945 (11th Cir. 1986) ("Where the terms and conditions of a policy are unambiguous, the court must declare the contract as made by the parties" and "[w]here the meaning is plain and obvious, it should be treated as literally provided therein") (quoting *Genone v. Citizens Ins. Co. of N.J.,* 60 S.E.2d 125, 127 (Ga. 1950)) (citations omitted). The reason is that implying UM coverage by operation of law into a liability policy does not reform nor render that policy's provisions void. *See Flewellen v. Atlanta Cas. Co*., 300 S.E.2d 673, 678 (Ga. 1983) ("[W]hen an insurer issues a policy with provisions not in compliance with the law[,] the contract will not be rendered void[,] but the provisions of the statute will be grafted into the policy."); *accord* O.C.G.A. § 33-24-12(a). *Cf. Virginia Properties v. Home Ins. Co*., 74 F.3d 1131, 1135 (11th Cir. 1996) ("If the terms of an insurance contract are plain and unambiguous, the contract must be enforced as written (provided it does not contravene the law).") (citing *Ryan v. State Farm Mut. Auto. Ins. Co.,* 413 S.E.2d 705 (Ga. 1992)).

As its insuring provisions show, coverage is not triggered under the Endurance policy unless and until the combined $45 million limits of the underlying Westchester, Great American, and American Guarantee policies are exhausted. (*See* R. 5-5, 4, 21, 36, 41.) Likewise, the insuring provisions of the Westchester, Great American, or American Guarantee policies all show that the

Endurance policy was specifically written to apply excess to each of those three policies. (*See* R. 5-2, p. 6; R. 59-2, pp. 2, 18; R. 59-4, pp. 3, 18.)  Harmonizing these insuring provisions unquestionably dictates that Endurance stands last in order of priority.  *See, generally, Zurich Am. Ins. Co. v. Beasley*, 666 S.E.2d 83, 84-85 (Ga. Ct. App. 2008) (Declarations page to policy governed whether parties intended that it be a new or renewal policy); *Simalton v. AIU Ins. Co.,* 643 S.E.2d 553, 555 (Ga. Ct. App. 2007) ("form policy must be read together with the Declarations Page to determine" coverage and in what amount).

Because the insuring provisions of the four policies remained legal and are reconcilable, the District Court was not permitted to resort to any judicially created doctrine to resolve the issue of priority, or to order Endurance to pay a *pro rata* share of Mr. Coker's damage award.  Rather, O.C.G.A. § 13-2-2 required the District Court to stack the Endurance policy last in order of priority.  *See also, generally, State v. Fielden*, 629 S.E.2d 252, 257 (Ga. 2006) ("[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes.") (citation omitted); *Home v. Great Am. Ins. Co.,* 134 S.E.2d 865, 869 (Ga. Ct. App. 1964) ("The rights of the insurers amongst themselves must be determined not by adjustment of equity but by the provisions of the contracts made.").

### 2.    The District Court failed to recognize that the "most closely related to" judicial test supports that Endurance stands last.

Even assuming, *arguendo*, that the insuring provisions of the respective policies could not be harmonized (which they can), the District Court still erred in defaulting to proration of stackable coverage.  Georgia courts, when faced with multiple UM policies containing irreconcilable insuring provisions, have created three tests for prioritizing stackable coverage: the "receipt of premium" test, "the most closely related to" test, and the "circumstances of the injury" test.  *Georgia Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co*., 336 S.E.2d 237, 238 (Ga. 1985); *Travelers Indem. Co*., 379 S.E.2d at 185; *Great Divide Ins. Co. v. Safeco Ins. Co.,* 580 S.E.2d 313, 314 (Ga. Ct. App. 2003).[10]  Only if none of the three tests resolves the issue "may" proration be appropriate.  *Progressive Classic Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 670 S.E.2d 497, 500 (Ga. Ct. App. 2008) ("*Progressive Classic*").

Here, the "receipt of premium" test would not have been dispositive of the priority issue, as Westchester, Great American, American Guarantee, and Endurance received the premium from the same insured.  However, and as

---

[10] The "receipt of premium" test deems the carrier that receives the premium from the injured party primarily responsible for providing UM coverage.  *Georgia Farm Bureau Mut. Ins. Co*., 336 S.E.2d at 238.  "The most closely related to" test examines the relationship of the injured plaintiff to the policy, in order to determine the priority of stackable coverage.  *Travelers Indem. Co.,* 379 S.E.2d at 185. When neither of these two tests is dispositive, the "circumstances of the injury" test "fill[s] the void."  *Great Divide Ins. Co.,* 580 S.E.2d at 314.

*Progressive Classic* makes clear, the "most closely related to" test would have resolved the order of priority among the stackable UM policies here.

*Progressive Classic* involved several sources of available UM coverage, including two umbrella policies issued by Nationwide. 670 S.E.2d at 499. Because the "receipt of premium" test did not resolve the priority issue as between the two Nationwide policies, the court turned to the respective insuring provisions in those policies. *Id.* at 500-01. In doing so, the court noted that the second of the two Nationwide policies, pursuant to its unambiguous terms and Declarations, was specifically written in excess of the first Nationwide policy. *Id.* Consequently, the court determined that the insured was more closely related to the first Nationwide policy and, thus, that the second Nationwide policy stood behind it in terms of priority. *Id.*

*Progressive Classic* clarifies that, for purposes of prioritizing stackable UM coverage, the respective insuring provisions of multiple policies involved may determine which policy is "most closely related to" the insured. Even the District Court expressly recognized that *Progressive Classic* "informs the courts on how to apply the "more closely identified with" test where priority is between a primary automobile policy carrying written UM coverage and an umbrella policy carrying written UM coverage." (Doc. 120, p. 34 n. 26.)

Just as in *Progressive Classic*, the Endurance policy is part of Dyson's overall insurance program in which the underlying $45 million combined limits of the underlying Westchester, Great American, and American Guarantee policies must be exhausted before coverage is triggered. Nothing in the insuring provisions of any of the policies suggests otherwise. Because the "most closely related to" test resolves the priority of coverage issue, the District Court was not permitted to resort to any judicially created doctrine to resolve the issue of priority, or to order Endurance to pay a *pro rata* share of Mr. Coker's damage award. *See Georgia Farm Bureau Mut. Ins. Co.*, 336 S.E.2d at 237-38 (proration of stackable coverage as between UM carriers was improper where receipt of premium test resolved order of priority); *Progressive Classic*, 670 S.E.2d at 502 ("[B]ecause we have found that the priority of the three insurance policies can be determined through application of the 'more closely identified with' test, we agree with the trial court that proration does not apply here.") (citation omitted).[11]

### 3. The "Other Insurance" clauses in the respective polices have no relevance to this dispute.

In concluding otherwise, the District Court overlooked that the Westchester, Great American, American Guarantee, and Endurance policies are vertically-tiered in Dycom's tower-of-coverage plan. In so doing, the District Court improperly

---

[11] *Accord Nationwide Mut. Fire Ins. Co. v. Progressive Bayside Ins. Co.*, 628 S.E.2d 177, 180 (Ga. Ct. App. 2006); *Clarendon Nat'l Ins. Co. v. Sledge*, 583 S.E.2d 514, 515-16 (Ga. Ct. App. 2003).

conflated these policies' insuring provisions with their respective "Other Insurance"-type clauses,[12] and relied on inapposite cases that have no bearing here.

"Other Insurance" provisions become relevant in the UM context only where the insuring provisions in multiple UM policies do not indicate the priority of stackable coverage, and when none of the three judicial tests used to determine priority resolve the dispute. In those situations, competing "Other Insurance" clauses that may be reconciled by their plain language govern the priority of stackable coverage. *See 3060 Corp. v. Crescent One Buckhead Plaza, L.P.,* 686 S.E.2d 367, 370 (Ga. Ct. App. 2009) ("We look to the language of each policy and the factual setting in order to solve seemingly conflicting claims about the layer of coverage each policy provides."); *Ga. Mut. Ins. Co. v. S. General Ins. Co*., 351 S.E.2d 658, 660 (Ga. Ct. App. 1986) ("The fact that the clauses are identical, standing alone, does not mandate the conclusion that the clauses are irreconcilable and cancel each other out. The two insurance policies must be read with the factual setting in mind."). However, and as the District Court recognized, where competing "Other Insurance" clauses cannot be harmonized, they "cancel each

---

[12] "Other Insurance" clauses expressly limit coverage in the event other insurance coverage is available for the particular loss. *State Farm Mut. Auto. Ins. Co. v. Murphy*, 177 S.E.2d 257, 260 (Ga. 1970). *Cf. Atkinson v. Atkinson*, 326 S.E.2d 206, 213-14 (Ga. 1985) (comparing excess policy with primary policy containing an excess clause). The Westchester, Great American, American Guarantee, and Endurance policies each have "Other Insurance" provisions. (R. 5-2, p. 20; R. 59-2, p. 22; R. 5-3, p. 22, p. 5-5, p. 45)

other out" and the insurers share in the liability *pro rata*.  *Am. Cas. Co. v. MAG Mut. Ins. Co.*, 185 Fed. Appx. 921, 925 (11th Cir. 2006) (citations omitted).[13]

Here, the District Court did not need to examine the respective policies' "Other Insurance" provisions to determine the hierarchy of stackable coverage among the Westchester, Great American, American Guarantee, and Endurance policies.  In light of the clear and unambiguous insuring clauses in the respective policies, or in accordance with the "most closely related to" test, the "Other Insurance" clauses in those policies are not relevant to this inquiry.  *See, e.g., Atkinson v. Atkinson*, 326 S.E.2d 206, 214 (Ga. 1985) ("[U]mbrella coverages … are regarded as true excess over and above any type of primary coverage, *excess provisions arising in regular policies in any manner, or escape clauses*.") (emphasis supplied).  *Accord MAG Mut. Ins. Co.*, 185 Fed. Appx. at 927.

### B.    Mr. Coker's Failure to Exhaust Vitiates His Claim.

Under Georgia law, an insured generally must exhaust the total limits of all underlying coverage before seeking additional benefits from the next vertical layer of coverage.  *Garmany*, 785 F.2d at 947.  This exhaustion doctrine applies equally in the UM context.  *See Georgia Farm Bureau Mut. Ins. Co.,* 336 S.E.2d at 237-38

---

[13] *See also Woods v. State Farm Mut. Auto. Ins. Co*., 218 S.E.2d 65, 67 (Ga. 1975); *St. Paul Fire & Marine Ins. Co. v. Valley Forge Ins. Co*., 2009 U.S. Dist. LEXIS 23663, *14 (N.D. Ga. Mar. 23, 2009); *Johnson v. State Farm Mut. Auto. Ins. Co.,* 455 S.E.2d 91 (Ga. Ct. App. 1995); *St. Paul Fire & Marine Ins. Co. v. Goza,* 224 S.E.2d 429, 431 (Ga. Ct. App. 1976).

(resolving the priority of two stackable UM policies and determining that the secondary policy liable for damages **only** to the extent that they exceeded the limits of the primary carrier).    Any other conclusion would vitiate the need to stack multiple UM policies in the first place.    *Accord Cont'l Ins. Co. v. S. Guar. Ins. Co.,* 388 S.E.2d 16, 18 (Ga. Ct. App. 1989) (trial court erred in prorating the stackable uninsured motorist coverage rather than holding that "Continental was the excess carrier with responsibility for compensating Marshall up to its $500,000 policy limit only upon the exhaustion of the $100,000 limit of Southern's primary policy"); *Travelers Indem. Co.,* 379 S.E.2d at 185 (where injured insured's damages exceeded tortfeasor's liability coverage limits, "the coverages provided by the [primary UM] policy would then apply and thereafter the coverages provided by the [secondary UM] policy").

The District Court erroneously held that the exhaustion doctrine applies only as to a primary UM policy, and not with respect to excess or umbrella policies.  (R. 120, p. 26.)   In doing so, it overlooked that, by virtue of the waiver of UM coverage executed before the accident, no UM coverage was available under the Liberty Mutual policy.  Thus, the Westchester policy, by virtue of the "Retained Limits" provision in its insuring clause, dropped down to provide $10 million in primary UM coverage.  *See Garmany*, 785 F.2d at 948 ("The purpose of the [lower] retained limit is to extend different kinds of coverage than the existing

liability insurance provided by the underlying policy and the extra limits of the umbrella policy."). (*Accord* T. 71, 91-92.)  Given this, the Cokers were required to exhaust the limits of the Westchester before seeking additional benefits from any excess carrier.  *See also Garmany*, 785 F.2d at 947 ("If the occurrence is 'covered' under the primary policy, the threshold point under the umbrella policy is fixed at $500,000.  If the occurrence is 'not covered', the threshold point drops to become primary coverage extending above the $10,000 deductible.").

Nothing in Georgia law vitiates application of the exhaustion doctrine among multiple excess carriers in the UM context.  Indeed, "[b]oth parties to an insurance contract realize that, in determining both the insurable risk and the cost of the coverage, the insurer must know the point at which its liability will arise." *Fried v. North River Ins. Co*., 710 F.2d 1022, 1026 n. 6 (4th Cir. 1983), *cited with approval in Garmany*, 785 F.2d at 947.  In this case, the parties to the Endurance policy, by virtue of its clear and unambiguous insuring provisions, expressly intended that there would be a fixed threshold at which Endurance's duty to pay would arise, *i.e.,* upon exhaustion of the combined $45 million total limits of all underlying insurance (*i.e.,* the Westchester, Great American, and American Guarantee policies).  *See Livoti v. Aycock,* 590 S.E.2d 159, 164 (Ga. Ct. App. 2003) (intent determined from face of document); *accord* O.C.G.A. § 13-2-2(1).

Contrary to the District Court's reasoning, applying the exhaustion doctrine here does not violate O.C.G.A. § 33-7-11. The UM statute serves to provide a mechanism "for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers." *Smith v. Commercial Union Assurance Co.,* 268 S.E.2d 632, 634 (Ga. 1980) (citations omitted). The underlying insurance specified in the Declarations and Schedule to the Endurance policy satisfies this legislative intent insofar as Mr. Coker had sufficient available coverage from which he could satisfy his consent judgment. Georgia law required him to do so before Endurance could become liable under its policy. *Accord Georgia Farm Bureau Mut. Ins. Co.,* 336 S.E.2d at 237-38; *Cont'l Ins. Co.,* 388 S.E.2d at 18; *Travelers Indem. Co.,* 379 S.E.2d at 185.

In holding otherwise, the District Court misplaced reliance on *Futch v. J. C. Penney Ins. Co.,* 354 S.E.2d 869 (Ga. Ct. App. 1987) and *Jefferson-Pilot Fire & Cas. Co. v. Combs,* 304 S.E.2d 448 (Ga. Ct. App. 1983). In *Futch,* the insured settled with his secondary UM carrier for $7,500, less than the policy limits, prior to the rendition of a verdict establishing the amount of his damages. 354 S.E.2d at 869-70. This fact, the court held, did not relieve the primary UM carrier from making the insured whole up to the $10,000 limits of its policy. *Id.* at 870.

Similarly, *Combs* held that the fact that the insured's parents settled for less than the policy limits with one primary UM carrier did not preclude them from seeking the remainder of their recovery from the other primary UM carrier, up to the limits of its policy. 304 S.E.2d at 450-51 (citing *State Farm Mut. Auto. Ins. Co. v. Harper*, 188 S.E.2d 813 (Ga. Ct. App. 1972) (involving two separate UM policies that contained identical provisions and made no reference to each other)).

Unlike the policies issued in *Futch* and *Combs*, the Endurance policy does not provide primary UM coverage here. This distinction is key because Georgia law obligates primary UM carriers to provide benefits up to the limits of their respective policies to satisfy an insured's actual damages award. *See Travelers Indem. Co. v. Williams*, 167 S.E.2d 174, 176 (Ga. Ct. App. 1969) (so supporting). In contrast with policies containing excess "Other Insurance" clauses, *see supra,* Georgia law does not require true excess UM carriers like Endurance to provide first-party UM insurance when underlying coverage sufficient to satisfy an insured's damages exists. *Accord McGow v. McCurry*, 412 F.3d 1207, 1213 (11th Cir. 2005) (true excess policies provide coverage "only where a separate underlying policy provides primary coverage and the loss exceeds the limit of that primary coverage"); *Wellons, Inc. v. Lexington Ins. Co*., 2013 U.S. Dist. LEXIS 42782, *48 n. 18 (N.D. Ga. 2013) ("Under the general rule, an excess carrier has no duty to speak as to coverage until the primary layer has been exhausted.")

(citations omitted); *Combs*, 304 S.E.2d at 450 (UM coverage "'stack[s]' until the amount of damage [is] paid, assuming that [underlying] coverages, on a per policy basis, [are] not sooner exhausted").

In determining that Endurance's liability (as well as Great American's and American Guarantee's liability) commenced at the same time as the Westchester policy, *i.e.,* at a fixed point of $0, the District Court reversibly erred. This is especially so given that Mr. Coker would have satisfied his consent judgment more than eight times over had he availed himself of the available limits of all underlying insurance identified in Endurance's Schedule of Underlying Policies. His failure to exhaust any of those limits did not trigger Endurance's liability under its policy. To hold otherwise would subject Endurance "to unforeseeable and variable risks depending upon the underlying insurance actually maintained by any one of the potential insureds." *Garmany*, 785 F.2d at 947 (quotation omitted).

### III. Coverage Alternatively Never Triggered under the Endurance Policy because Mr. Coker Violated Its Consent-to-Settle Requirement.

As a matter of Georgia law, no breach of contract claim may lie against the excess carrier when an insured, as here, unilaterally settles with an underlying carrier in violation of a policy provision such as those in Endurance policy's here. *See Piedmont Office Realty Trust, Inc.* 2015 Ga. LEXIS 247, at *9-10 (an insured's unilateral decision to settle the case with an underlying liability carrier constitutes

a "voluntary act" rather than a legal obligation that otherwise would trigger coverage under the insured's excess policy).  Because the Cokers did not obtain Endurance's approval before entering into the consent judgment with Mr. Woodall, or for $5.5 million, or before accepting significantly less than the limits of the Westchester policy, coverage under the Endurance policy never triggered.

In holding otherwise, the District Court stated that such conclusion would conflict with O.C.G.A. §§ 33-7-11(g), which states:

> No endorsement or provisions shall contain a provision requiring arbitration of any claim arising under any endorsement or provisions, nor may anything be required of the insured, *subject to the other provisions of the policy or contract,* except the establishment of legal liability; nor shall the insured be restricted or prevented, in any manner, from employing legal counsel or instituting legal proceedings.

(Emphasis supplied.) (R. 172, p. 11 & n. 14.)  But the Endurance consent-to-settle provision does not restrict insureds from employing legal counsel.  Nor does it prevent the filing of legal proceedings.

Any other conclusion would eliminate virtually every provision of every UM policy, save the requirement that the insured establish the legal liability of the uninsured tortfeasor.  Indeed, such a construction would negate the "subject to the other provisions of the policy" clause that qualifies the statute.  *See Union City Bd. of Zoning Appeals v. Justice Outdoor Displays*, 467 S.E.2d 875, 881 (Ga. 1996)

(Georgia law precludes courts from construing a statute to render any portion of it meaningless); *accord* O.C.G.A. § 13-2-2(4).

*Abrohams v. Atlantic Mut. Ins. Agency*, 638 S.E.2d 330 (Ga. Ct. App. 2006) does not change this analysis. As discussed in Section III.A.1 above, simply because the District Court implied UM coverage by operation of law into the Endurance policy did not reform nor render its provisions void. *Accord Flewellen,* 300 S.E.2d at 678; O.C.G.A. § 33-24-12(a).

Moreover, the fact that his violation of the consent-to-settle requirement in the Endurance policy precludes Mr. Coker from suing Endurance here does not mean that the provision condition violates the statute. In fact, in other cases, that very language has provided the basis for concluding that analogous provisions are conditions precedent and, thus, enforceable. *See, e.g., Flamm v. Doe*, 307 S.E.2d 105, 106 (Ga. Ct. App. 1983) ("Although we find a general preference in our public policy that motorists, such as plaintiff, be protected by insurance coverage, we also perceive under these circumstances a compelling need on the part of the insurer to receive timely notice of the events giving rise to a claim."); *Cotton States Mut. Ins. Co. v. Hipps,* 481 S.E.2d 876, 877 (Ga. Ct. App. 1997) (upholding policy requirement that insured give notice within 60 days after the occurrence, "the plain duty to which he agreed and induced Cotton States to issue this policy"); *Burkett v. Liberty Mut. Fire Ins. Co*., 629 S.E.2d 558, 560-61 (Ga. Ct. App. 2006) (enforcing

policy requiring insured to "promptly send us copies of the legal papers if a suit is brought"); *Royer v. Murphy*, 625 S.E.2d 544, 545 (Ga. Ct. App. 2006) (insured's failure to satisfy notice requirement, a condition precedent, was fatal to her claim).

In concluding otherwise, the District Court misplaced reliance on *Gulf American Fire & Cas. Co. v. McNeal*, 154 S.E.2d 411 (Ga. Ct. App. 1967). In *McNeal*, the Court of Appeals struck down a policy provision excluding the named insured or members of his household who became injured while occupying an UM vehicle because it conflicted with the remedial purpose of the UM statute. 154 S.E.2d at 417. *McNeal* is inapposite for two reasons. First, requiring insureds to obtain the consent of the UM insurer before settling with an underlying carrier supports rather than thwarts the remedial purpose of O.C.G.A. § 33-7-11. Second, *McNeal* involved a policy exclusion, not a condition precedent to coverage. O.C.G.A. § 33-7-11(g) may preclude the former, but expressly allows the latter.

The District Court also misstated the holding of *Terry v. Mays*, 291 S.E.2d 44 (1982) in holding that the consent-to-settle provision in the Endurance policy is "repugnant" to O.C.G.A. § 33-7-11(g). (R. 172, p. 11.) Notwithstanding that Mays specifically involved the interpretation of <u>South Carolina</u> rather than Georgia law, the Georgia Court of Appeals there affirmed an order granting the insurer's motion "to be relieved as a party at interest because Terry had violated a provision of the insurance policy which excluded uninsured motorist coverage if the insured

settled with an uninsured motorist without the consent of State Farm." 291 S.E.2d at 45.  Thus, *Mays* in line with *Piedmont Office Realty Trust*, not contrary to it.

In short, because the Cokers did not notify nor obtain the consent of Endurance before entering into the consent judgment with Mr. Woodall, or before unilaterally settling with Westchester for a pittance of the policy limits, summary judgment on their claims should have been entered in favor of Endurance as a matter of law.  Any other conclusion would thwart the remedial purposes of the UM statute by condoning (if not encouraging) collusion among insureds and primary UM carriers and result in increased premiums that deprive innocent victims from being able to afford UM coverage.  Reversal is, thus, required.

## CONCLUSION

Based on the foregoing, Endurance requests that this Court reverse summary judgment in favor of Mr. Coker on his breach of contract claim, and remand with instructions that final summary judgment on such claim be entered for Endurance.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B).  This brief contains 7,322 words.

Respectfully submitted, this 13th day of November, 2015.

<div style="text-align:right">

/s/ Joelle C. Sharman

R. SCOTT MASTERSON

Georgia Bar No. *476356*

*scott.masterson@lewisbrisbois.com*

JOELLE C. SHARMAN

Georgia Bar No. 637931

*joelle.sharman@lewisbrisbois.com*

</div>

LEWIS BRISBOIS BISGAARD &
SMITH LLP

1180 Peachtree Street, NE

Suite 2900

Atlanta, Georgia 30309

Telephone: (404) 348-8585

Facsimile: (404) 467-8845

Attorneys for Appellant-Defendant
Endurance American Specialty
Insurance Company

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2015, I served the foregoing Appellant Endurance American Specialty Insurance Company's Initial Brief upon all parties to this matter by using the CM/ECF system, to counsel of record as follows:

Michael C. Kendall
Talley, French & Kendall, P.C.
3152 Golf Ridge Blvd., Suite 201
Douglasville, GA  30135
mckendall@bellsouth.net
*Counsel for Plaintiff Gary Wayne Coker and Teresina Coker*

Yehuda Smolar
The Smolar Firm
500 Bishop Street, Suite A6
Atlanta, GA  30318
ysmolar@yeslawgroup.com
*Counsel for Plaintiff Gary Wayne Coker and Teresina Coker*

Michael J. Athans
Fields Howell Athans
    & McLaughlin, LLP
191 Peachtree Street, NE
Atlanta, GA  30303
mathans@fieldshowell.com
*Counsel for Defendant Great American Insurance Company*

Stephen Michael Schatz
Swift, Currie, McGhee & Hiers, LLP
1355 Peachtree Street, N.E.
The Peachtree, Suite 300
Atlanta, GA  30309
Steve.schatz@swiftcurrie.com
*Counsel for Defendant American Guarantee and Liability Insurance Company*

[*Signature on following page*]

/s/ Joelle C. Sharman
Joelle C. Sharman
Georgia Bar No. 637931
*joelle.sharman@lewisbrisbois.com*

Attorney for Appellant-Defendant
Endurance American Specialty
Insurance Company